**UNITED STATES DISTRICT COURT**

**FOR THE**

**DISTRICT OF VERMONT**

|  | : |  |
|---|---|---|
| ERNEST J. CICCOTELLI, | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | Case No. 2:15-cv-105 |
| v. | : | |
|  | : | |
| DEUTSCHE BANK AG, | : | |
| DEUTSCHE BANK AMERICAS HOLDING | : | |
| CORP., | : | |
| DEUTSCHE BANK NATIONAL TRUST | : | |
| CO. Trustee for the Long Beach | : | |
| Mortgage Loan Trust 2006-WL2, | : | |
| JUERGEN FITSCHEN, ANSHU JAIN, | : | |
| & DONNA M. MILROD, | : | |
|  | : | |
| Defendants. | : | |
|  | : | |

**Opinion and Order**

Plaintiff Ernest J. Ciccotelli, an attorney proceeding *pro se*, brings the present case against Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-WL2 ("DBNTC"), and several related entities and individuals. Ciccotelli seeks both monetary damages and a discharge of his 2005 mortgage on the grounds that Defendants have engaged in unfair and deceptive acts, and have caused the title to his property to become unmarketable.

Currently before the Court are (1) DBNTC's motion to dismiss (ECF No. 18); (2) Ciccotelli's motion to amend the Complaint (ECF No. 26); (3) Ciccotelli's motion for default judgment (ECF No. 30); (4) Defendants' motion to vacate the entry of default (ECF No. 37); (5) DBNTC's motion to seal (ECF No. 32); and (6) Ciccotelli's motion to dismiss the motion to seal (ECF No. 34).  For the reasons that follow, the Court **grants** DBNTC's motion to dismiss and **denies** Ciccotelli's motion to amend.  The Court also **denies** Ciccotelli's motion for default judgment and **grants** Defendants' motion to vacate the entry of default.  Finally, the Court **grants** DBNTC's motion to seal and **denies** Ciccotelli's related motion.

BACKGROUND[*]

Plaintiff Ciccotelli lives in a home that he designed and built at 49 Tigertown Road in Norwich, Vermont ("Property").  On September 19, 2005, Ciccotelli executed a $165,000 promissory note ("Note") made payable to Long Beach Mortgage Company.  To secure his promise to pay his obligation under the Note, Ciccotelli executed a Mortgage on the Property on the same day. The Mortgage, which identifies Long Beach Mortgage Company as the lender, was recorded in the Norwich land records at Book

---

[*] The following facts are taken from Ciccotelli's Complaint and are presumed to be true for the purposes of a Rule 12(b)(6) motion to dismiss.

174, Pages 514-533.  No assignments of mortgage have been recorded.

On or about July 29, 2008, Ciccotelli filed suit against Washington Mutual, Inc. in Vermont Superior Court.  Washington Mutual had serviced Ciccotelli's mortgage loan since origination, and Ciccotelli alleged that it was liable for consumer fraud and other wrongful acts.  In October 2008, after JPMorgan Chase & Co. ("Chase") acquired Washington Mutual, Ciccotelli amended his state court complaint to include Chase and the FDIC as defendants.  The suit was later removed to federal court, where Ciccotelli amended his complaint for a second time.  DBNTC was not a party to the 2008 action.

Throughout the 2008 lawsuit, Ciccotelli repeatedly requested that Chase identify any other parties that had an interest in his mortgage loan.  Chase did not reveal any additional parties, however, and instead represented to the court that it was the holder of Ciccotelli's Note and Mortgage. On several occasions during the pendency of the case, Chase presented Ciccotelli with the original Note and Mortgage, "purporting to rightfully hold and enforce those documents on its own behalf." ECF No. 5 at 4.  Chase did not respond to Ciccotelli's requests to produce documentation of an assignment from Long Beach Mortgage Company to Chase.

Ciccotelli settled the 2008 lawsuit in the end of May 2013. Immediately thereafter, he received a letter from Select Portfolio Servicing ("SPS") indicating that it was replacing Chase as the servicer of his mortgage loan.  The letter further stated that SPS was acting "on behalf of Deutsche Bank National Trust Co. As Trustee in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-WL2 Asset Backed Certificates, Series 2006-WL2."  ECF No. 5 at 5.  Prior to receiving the letter from SPS, Ciccotelli was unaware that DBNTC was the holder of his Note and Mortgage.

In July 2014, approximately fourteen months after settling the 2008 lawsuit, Ciccotelli filed the present action in Vermont Superior Court.  DBNTC removed the case to this Court in May 2015.  As alleged in the Complaint, Ciccotelli's claims largely stem from the assertion that there is no recorded assignment documenting the transfer of interest in Ciccotelli's mortgage loan from Long Beach Mortgage Company to DBNTC.  Because such a record does not exist, Ciccotelli submits that Defendants have "incurably damaged [the] chain of title to [his] Property," rendering the title to his property unmarketable.  ECF No. 5 at 7.  Specifically, the Complaint alleges six causes of action: (1) fraud related to the 2008 action under Vermont's Consumer Fraud Act; (2) fraud related to the collection of Ciccotelli's mortgage payments under Vermont's Consumer Fraud Act;

4

(3) conversion; (4) embezzlement; (5) a request for a
declaration of clear title; and (6) a request to discharge the
2005 mortgage.

DBNTC now moves to dismiss the Complaint in its entirety,
and Ciccotelli moves to amend.  Motions related to an entry of
default and a request to seal are also pending.

**DISCUSSION**

**I.   DBNTC's Motion to Dismiss**

  **A. Legal Standard**

DBNTC seeks dismissal of the Complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6).  In order to survive a Rule
12(b)(6) motion to dismiss, "a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief
that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009) (internal quotation omitted).  A claim is
facially plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* (internal
citation omitted).  Determining whether a complaint states a
plausible claim for relief is "a context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense." *Id.* at 679 (internal citation omitted).

Ordinarily, in ruling on a Rule 12(b)(6) motion to dismiss,
a district court "must interpret the factual allegations of a

*pro se* complaint to raise the strongest arguments that they suggest." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation omitted).  Here, however, Ciccotelli is an attorney who has practiced real estate law for a number of years.  Consequently, he does not receive "the special consideration which the courts customarily grant to *pro se* parties." *Harbulak v. Cnty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001).

### B. Fraud (Counts I & II)

DBNTC first moves to dismiss Counts I and II of the Complaint, which allege deceptive acts and practices under Vermont's Consumer Fraud Act.  Vermont's Consumer Fraud Act declares unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a).  In order to establish that an act or practice was deceptive within the meaning of the statute, a plaintiff must show that "(1) the representation or omission at issue was likely to mislead consumers; (2) the consumer's interpretation of the representation was reasonable under the circumstances; and (3) the misleading representation was material in that it affected the consumer's purchasing decision." *Jordan v. Nissan N. America, Inc.*, 853 A.2d 40, 43 (Vt. 2004) (internal citations omitted).  Courts are to apply an

objective, reasonable consumer, standard in assessing each of the aforementioned elements.  *See id.*

In addition, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake."  To comply with that mandate, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015) (internal quotation omitted).

**1. Fraud Related to the 2008 Lawsuit (Count I)**

Count I of the Complaint asserts that Defendants violated Vermont's Consumer Fraud Act by "knowingly and deliberately collud[ing] with [Chase] in its unfair and deceptive representation that it possessed an interest in Plaintiff's Mortgage or Note."  ECF No. 5 at 6.  Ciccotelli states that on May 26, 2011, and on two occasions thereafter, Chase showed him the original Note and Mortgage to his property, and represented that it was the holder of those legal documents.  Because it was later revealed that DBNTC holds Ciccotelli's Mortgage, Ciccotelli contends that DBNTC must have colluded with Chase by providing it with the original Note and Mortgage.

DBNTC now moves to dismiss Count I for failure to state a claim.  According to DBNTC, although Ciccotelli's claim expounds on the actions of Chase, it fails to present a single factual allegation attributing any deceptive statement or conduct to DBNTC.  Ciccotelli disputes that claim, arguing that the Complaint indicates that DBNTC's acts and omissions "assist[ed] and encourage[d] [Chase] to make false claims."  ECF No. 21 at 15.

The Court agrees with the DBNTC that Ciccotelli has not alleged any facts suggesting that it made a representation or omission that was likely to mislead.  At best, the Complaint asserts that DBNTC provided Chase with Ciccotelli's original Note and Mortgage.  Even accepting that claim as true, as the Court must, that action alone cannot subject DBNTC to liability for fraud because Chase was responsible for servicing Ciccotelli's mortgage loan.  The assertion that Chase used the original loan documents to misrepresent its interest in Ciccotelli's Mortgage and Note does not, by itself, implicate DBNTC.  As a result, absent a specific factual allegation indicating *how* DBNTC encouraged Chase make such misstatements, Count I cannot proceed.  The Court therefore **grants** DBNTC's motion to dismiss with respect to Count I of the Complaint.

## 2. Fraud Related to the Collection of Mortgage Payments (Count II)

Count II of the Complaint asserts that Defendants have violated the Vermont Consumer Fraud Act by collecting payments on Ciccotelli's mortgage loan because there is "no record, notice or other evidence that the Mortgage was assigned or transferred to Defendants from Long Beach Mortgage Company." ECF No. 5 at 8.  Because there is no recorded assignment demonstrating that DBNTC is the holder of the Mortgage and Note, Ciccotelli continues, Defendants have "maliciously misrepresented themselves . . . to be the mortgagee . . . in order to obtain the monthly mortgage payments due to the true mortgagee." ECF No. 5 at 8.

In its motion to dismiss, DBNTC asserts that it has provided Ciccotelli with an assignment of mortgage executed by Long Beach Mortgage Company and endorsed in blank.  Accordingly, DBNTC submits that it is the true holder of the loan, and maintains that Ciccotelli has failed to allege that it has committed a fraudulent, unfair, or deceptive act.  Ciccotelli makes two arguments in response.  First, he claims that DBNTC is liable for fraud under the Act by knowingly failing to record the assignment of mortgage.  Second, he contends that the assignment is the product of forgery.

Initially, the Court rejects Ciccotelli's contention that knowingly failing to record an assignment of mortgage constitutes an act of fraud.  Under Vermont law, "an assignment is not a conveyance of real estate."  *In re Briggs*, 186 B.R. 830, 833 (Bankr. D. Vt. 1995).  Consequently, assignments are not subject to the requirements of Vermont's recording statutes. *Id.* (holding that the failure to record an assignment of mortgage had no impact on the mortgage debt because the original recorded mortgage provided constructive notice); *see also Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 91 (2d Cir. 2014) (holding that under California and New York law, "[t]he assignment of a mortgage need not be recorded for the assignment to be valid"); *Robinson v. Deutsche Bank Nat. Trust Co.*, 932 F. Supp. 2d 95, 104 (D.D.C. 2013) ("District of Colombia law does not require an assignment of a note or deed of trust to be recorded in order for the transfer to be valid."); *In re Cook*, 457 F.3d 561, 568 (6th Cir. 2006) (holding that the bank's failure to record the assignment of mortgage had "no effect on its ability to enforce the mortgage").  Because there is no recording requirement for assignments of mortgage, Ciccotelli's argument that DBNTC's failure to record the assignment was somehow misleading cannot succeed.

Moving next to Ciccotelli's claim that the assignment of mortgage provided by DBNTC is forged, the Court finds that such

an assertion fails to satisfy the heightened pleading requirement of Rule 9(b).  Ciccotelli acknowledges in both his Complaint and his response to DBNTC's motion to dismiss that he has seen the assignment of mortgage.  He states in his response, however, that the assignment he has seen "had all the hallmarks of a forgery and did not constitute proof that the Assignment was real or valid."  ECF No. 21 at 16.  Such a statement, without more, does not comply with the demands of Rule 9(b) because it provides no explanation as to how the document is fraudulent or why Ciccotelli believes it to be forged. Ciccotelli has not presented any facts suggesting that more than one entity claims to hold his Note and Mortgage.  Nor has he alleged that more than one servicer seeks to collect his monthly mortgage payment.  Simply put, Ciccotelli has given the Court no reason to believe that his claim is anything more than pure speculation.  Because vague and conclusory statements are insufficient to satisfy the pleading standard of Rule 9(b), Ciccotelli's claim cannot go forward.  *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982) ("To pass muster in this Circuit a complaint must allege with some specificity the acts constituting the fraud; conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.").  The Court therefore **grants** DBNTC's motion to dismiss with respect to Count II of the Complaint.

11

## C. Conversion (Count III)

DBNTC also moves to dismiss Ciccotelli's claim of conversion.  "To establish a claim for conversion, the owner of property must show only that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." *Montgomery v. Devoid*, 915 A.2d 270, 275 (Vt. 2006) (internal citations omitted).  "The key element of conversion, therefore, is the wrongful exercise of dominion over property of another." *Id.*

In his Complaint, Ciccotelli asserts that Defendants have wrongfully exercised dominion over his property "[b]y not recording the holding party or parties' interest" and "[b]y deliberately and knowingly hiding the identification of the holder of [the] mortgage."  ECF No. 5 at 10.  Such actions amount to conversion, Ciccotelli submits, because they cause "the title to the Property to become incurably clouded," thereby preventing him from gaining access to his equity.  ECF No. 5 at 10.  DBNTC contests the conversion claim on multiple grounds, arguing that Ciccotelli has failed to show that there is a cloud on title, and that consequently, he has not identified how DBNTC has exercised dominion over the Property.

12

As stated above, there is no recording requirement for assignments of mortgage under Vermont law. *In re Briggs*, 186 B.R. at 833; *see also Rajamin*, 757 F.3d at 91. It follows from that policy that the failure to record an assignment does not create a cloud on title. *See, e.g.*, *Ill. Dist. of American Turners, Inc. v. Rieger*, 770 N.E.2d 232, 239 (Ill. App. Ct. 2002) ("A valid interest in property cannot be a cloud on title."). Here, Ciccotelli's claim of conversion is premised on the assertion that DBNTC has prevented him from accessing the equity in his property. Because there is no cloud on title, however, Ciccotelli has failed to allege facts suggesting that his equity is inaccessible. Moreover, Ciccotelli has not asserted any other facts indicating how DBNTC, as the holder of his mortgage loan, has wrongfully exercised dominion over his property. For both of those reasons, Ciccotelli has failed to state a plausible claim for conversion. The Court therefore **grants** DBNTC's motion to dismiss with respect to Count III of the Complaint.

### D. Embezzlement (Count IV)

DBNTC next moves to dismiss Ciccotelli's claim for embezzlement. As Ciccotelli acknowledges in his response to DBNTC's motion, there is no private cause of action for embezzlement under Vermont law. *See* 13 V.S.A. § 2531.

13

Accordingly, the Court **grants** DBNTC's motion to dismiss with respect to Count IV of the Complaint.

### E. Clear Title (Count V)

DBNTC also moves to dismiss Count V of the Complaint.  In Count V, Ciccotelli seeks a declaratory judgment from the Court discharging his mortgage and clearing title to his property on the grounds that DBNTC's failure to record the assignment of mortgage has "caused the title to [his] Property to become incurably clouded."  ECF No. 5 at 14.  As explained above, the failure to record an assignment does not create a cloud on title.  Moreover, a recorded mortgage may not be discharged merely because an assignment was not recorded.  *In re Briggs*, 186 B.R. at 833.  For both of those reasons, the Court **grants** DBNTC's motion to dismiss with respect to Count V of the Complaint.

### F. Mortgage Discharge (Count VI)

Finally, DBNTC moves to dismiss Count VI of the Complaint.  In Count VI, Ciccotelli requests an order discharging his mortgage and clearing title to his property pursuant to 27 V.S.A. § 469.  Under § 469, a judge may grant a mortgagor's request to discharge his or her recorded mortgage where (1) "the mortgagee . . . , or the assignee of such mortgage, is a private corporation whose charter has expired by its own limitation, or has been dissolved by operation of law, forfeiture, or for any

14

other reason;" (2) the judge "is satisfied that the conditions
of such mortgage have been complied with, and have no force in
law;" and (3) the judge "is further satisfied that there is no
person within the state having authority to discharge such
mortgage."  27 V.S.A. § 469.

In his response to DBNTC's motion, Ciccotelli argues that
he is entitled to relief under the statute because Long Beach
Mortgage Company, the mortgagee listed on the recorded mortgage,
has dissolved, and there is no assignment of mortgage on record.
Ciccotelli further submits that "[t]he conditions of the
Mortgage have been complied with as best as can be ascertained
by Plaintiff, given that there is no reliable evidence that the
mortgagee of record has an assignee."  ECF No. 21 at 24.

Once again, Ciccotelli fails to state a plausible claim for
relief because an assignment of mortgage need not be recorded
for the assignment to be valid.  *See In re Briggs*, 186 B.R. at
833.  Consequently, Ciccotelli has not adequately alleged the
first element under the statute because he has not pleaded any
facts suggesting that DBNTC, as the assignee, has been
dissolved.  Moreover, Ciccotelli's claim fails for the added
reason that the Court is not satisfied that he has complied with
the conditions of his mortgage.  Ciccotelli acknowledges that he
has a mortgage loan, and he makes no claim that he has paid off
the Note.  Although the Court sympathizes with the frustration

15

that many borrowers have experienced throughout our nation's foreclosure crisis, that frustration alone cannot relieve mortgagors of their debt obligations.  Accordingly, the Court **grants** DBNTC's motion to dismiss with respect to Count VI of the Complaint.

## II.  Ciccotelli's Motion to Amend

The Court next addresses Ciccotelli's motion for leave to file an amended complaint.  Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should freely grant leave to amend "when justice so requires."  Nonetheless, "[a] district court has the discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal citation omitted).  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (internal citation omitted). Accordingly, the Court will reject as futile any proposed claim that does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

16

In the present motion, Ciccotelli seeks to amend his Complaint in two ways.  First, he wishes to assert the additional factual allegation that the Long Beach Mortgage Loan Trust 2006-WL2 ("Trust") does not exist.  Ciccotelli supports his assertion with statements indicating that he was unable to locate the Trust on the websites for the Secretaries of State for Delaware, New York, and California, and that he found certain documents related to the Trust on the website for the Securities and Exchange Commission.  Based on his allegation that the Trust does not exist, Ciccotelli hopes to contend that he "cannot be assured that he has actually been credited by the proper party or parties for his payments, or that his mortgage will be able to be discharged regardless of whether he has made every scheduled payment."  ECF No. 26-2 at 6.  Second, Ciccotelli requests to add Select Portfolio Servicing, Inc. ("SPS") as a defendant to this case, alleging that it has engaged in fraud by "pretending that the Trust exists."  ECF No. 33 at 4.  DBNTC opposes Ciccotelli's motion to amend on the grounds that he lacks standing to assert the proposed claims.

"The 'irreducible constitutional minimum of standing' under Article III of the Constitution includes the requirement that 'the plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical."  *Rajamin v. Deutsche*

*Bank Nat. Trust Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff bears the burden of establishing such standing." *Id.* at 84.

Here, as DBNTC argues, Ciccotelli has failed to establish Article III standing because the proposed amendments to the Complaint allege only hypothetical injuries. In the Complaint, Ciccotelli acknowledges that he took out a mortgage loan in the amount of $165,000. He has not pleaded that he has paid off the loan, or that he has ever paid Defendants more than the amount due under the terms of the Note. Thus, Ciccotelli makes no allegation that he has paid, or been asked to pay, more than he owes. In addition, Ciccotelli does not assert that another creditor has ever asked him to make payments on his loan. His claim that the Trust does not exist is therefore highly implausible, for it suggests that since 2005 there has been no collection effort by the true owner of his loan. For both of those reasons, the assertion that Ciccotelli has suffered an injury by having to make monthly payments to an entity that does not exist is wholly hypothetical. *See Rajamin*, 757 F.3d at 85 (affirming dismissal of plaintiffs' claims that defendants did not own their loans and were therefore improperly collecting their monthly payments on the grounds that such claims were "entirely hypothetical.").

Similarly, Ciccotelli's allegations that he will improperly lose his property in foreclosure because "he is statistically guaranteed to become either incapacitated or die before completing payments," ECF No. 33 at 11, and that he "cannot be assured . . . that his mortgage will be able to be discharged regardless of whether he has made every scheduled payment," ECF No. 26-2 at 6, do not indicate anything more than a conjectural or hypothetical injury. *See Rajamin*, 757 F.3d at 86 (holding that plaintiffs' purported injury that alleged defects in the assignments of their mortgages would prevent the bank from reconveying clear title to plaintiffs when they paid off their mortgages was conjectural and hypothetical). At present, Ciccotelli has not pleaded any facts suggesting that he is in default on his mortgage or that he is at imminent risk of foreclosure. Nor has he made assertions indicating that he has satisfied in full the terms of his Note. Thus, because Ciccotelli's proposed allegations fail to aver actual or imminent injuries sufficient to establish constitutional standing, the Court finds that such amendments would be futile. Accordingly, the Court **denies** Ciccotelli's motion for leave to amend the Complaint with respect the assertion that the Trust does not exist.

With regard to Ciccotelli's request to add SPS as a defendant in this case, DBNTC asserts that such an amendment

19

would also be futile, as Ciccotelli released all claims against SPS as a condition of settlement of the 2008 lawsuit. Ciccotelli disagrees, arguing that the settlement agreement did not release SPS from liability for future acts.

Having reviewed the settlement agreement from the 2008 lawsuit, the Court agrees with Ciccotelli that the agreement does not release SPS from liability for acts committed after May 29, 2013. *See* ECF No. 31-2.   Nonetheless, Ciccotelli's proposed claim that SPS has been "misappropriating [his] payments" relies on his assertion that the Trust does not exist.   ECF No. 26-2 at 6.   As discussed above, such a claim is entirely hypothetical and does not establish constitutional standing.   The Court therefore **denies** Ciccotelli's motion to add SPS as a defendant to the case on the grounds of futility.

## III. Defendants' Motion to Vacate the Entry of Default & Ciccotelli's Motion for Default Judgment

The Court now considers Defendants' motion to vacate the entry of default and Ciccotelli's motion for default judgment. On February 3, 2016, Ciccotelli applied to the Court to enter default against Defendants Deutsche Bank AG, Deutsche Bank Americas Holding Corp., Juergen Fitschen, and Anshu Jain pursuant Federal Rule of Civil Procedure 55.   *See* ECF No. 27. In support of his application, Ciccotelli submitted an affidavit in which he stated that he "served a Summons, together with a

copy of the Complaint and a Waiver of Service, on [said defendants] by first class mail, postage prepaid, on September 26, 2014." ECF No. 27-1 at 1. Finding that those Defendants had "failed to plead, file a verified answer or otherwise defend," the Court entered a default against them on February 4, 2016. ECF Nos. 28 & 29.

On March 11, 2016, the defaulted Defendants filed the present motion to vacate the entry of default on the grounds that Ciccotelli failed to properly serve them under Vermont law, and that they have presented other meritorious defenses. Ciccotelli submitted a response opposing the motion, arguing that service was adequate and that the default was willful. Ciccotelli also filed a motion of his own seeking a default judgment in the amount of $450,000.

A "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause to relieve a party from default exists, the Second Circuit has directed courts to assess three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Because there is a strong preference for resolving disputes on the merits, *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005), the Rule 55(c) standard is lenient, *Meehan v. Snow*,

652 F.2d 274, 277 (2d Cir. 1981).  Accordingly, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

Here, the defaulted Defendants have presented multiple meritorious defenses.  First, as both parties agree, Ciccotelli attempted to serve the Defendants pursuant to Vermont Rule of Civil Procedure 4(l).  Under that provision, a plaintiff may seek waiver of service by mailing the defendant a notice of suit and request for waiver, along with a copy of the complaint.  *See* V.R.C.P. 4(l)(3).  If the defendant refuses to waive service, he may be liable for the costs subsequently incurred in effecting service, but that does not relieve the plaintiff from his or her duty to properly serve the summons and complaint.  *See* V.R.C.P. 4(l)(6).  Although there was initially some dispute over the facts in the present case, Ciccotelli recently filed an amended affidavit acknowledging that he never served Defendants with a copy of the summons.  *See* ECF No. 41.  Moreover, Ciccotelli makes no claim that the defaulted Defendants waived service in response to his request under Rule 4(l).  Accordingly, the defaulted Defendants have adequately alleged insufficiency of service of process.

Second, in his Complaint, Ciccotelli does not present any factual allegations regarding the actions or omissions of

Deutsch Bank AG, Deutsche Bank Americas Holding Corp., Juergen Fitschen, or Anshu Jain.  Rather, in his response to Defendants' motion to vacate the entry of default, he claims that the defaulted Defendants are vicariously liable for the actions of DBNTC.  As explained above, the Court grants in full DBNTC's motion to dismiss on the grounds that Ciccotelli has failed to state a plausible claim for relief.[1]  Accordingly, Ciccotelli's claims against the defaulted Defendants cannot survive.

Although the Court recognizes Ciccotelli's argument that the default in this case may have been willful, the defaulted Defendants' plain defenses to this action, coupled with a lack of prejudice to Ciccotelli, serve to satisfy the lenient standard for establishing good cause to vacate the entry of default.  Accordingly, the Court **grants** Defendants' motion to vacate the entry of default and **denies** Ciccotelli's motion for default judgment.

## IV.  DBNTC's Motion to Seal & Ciccotelli's Motion to Dismiss the Motion to Seal

Finally, the Court addresses DBNTC's motion to seal and Ciccotelli's request to dismiss the same.  In its response to Ciccotelli's motion for leave to file an amended complaint, DBNTC references the settlement agreement entered into by Ciccotelli and Chase at the conclusion of the 2008 lawsuit.

---

[1] As indicated in their motion to vacate the entry of default, the defaulted Defendants join in DBNTC's motion to dismiss.  *See* ECF NO 37 at 9.

DBNTC cites the agreement in support of its argument that adding SPS as a defendant to the present case would be futile because Ciccotelli released SPS from liability for all claims related to his Note and Mortgage.  A copy of the agreement is attached to DBNTC's response.

DBNTC now moves to seal the settlement agreement on the grounds that it is confidential.  Specifically, DBNTC points to Section 5 of the agreement, which provides that "[t]he parties shall keep each and every term of this Settlement Agreement confidential, provided, however, that Ciccotelli may reveal the terms of this Settlement Agreement to his financial or legal advisors, to any federal or state taxing authority, or as otherwise required by law."  ECF No. 31-2 at 2.  Ciccotelli opposes the motion, arguing that because DBNTC was not a party to the settlement agreement, it lacks standing to request that the agreement be sealed.

In determining whether documents relating to a lawsuit must be made available to the public, the Second Circuit has directed courts to engage in a three-step analysis.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (internal citation omitted).  First, a court must decide whether the documents are "judicial documents," to which the public has a presumptive right of access.  *Id.* at 119.  "In order to be designated a judicial document, the item filed must be relevant

24

to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation omitted). Second, if the documents are indeed judicial documents, the court "must determine the weight of th[e] presumption." *Id.* "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). Third, "[o]nce the weight of the presumption is determined, a court must balance competing considerations against it." *Id.* at 1050. Competing considerations "include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Lugosch*, 435 F.3d at 120 (citing *Amodeo*, 71 F.3d at 1050).

Here, the Court finds that the settlement agreement is properly designated as a judicial document because it was attached to a motion that was dispositive of several of Ciccotelli's claims. *See Nycomed US, Inc. v. Glenmark Generics, Inc.*, 2010 WL 889799, at *4 (E.D.N.Y. Mar. 8, 2010) (holding that two documents filed in support of a motion to amend "clearly constitute 'judicial documents'" because they "relate to a motion that, if denied, might be dispositive of at least some of the parties' claims and defenses."). As to the weight

25

to be afforded to the presumption of access, the Second Circuit clarified in *Lugosch* that documents do not "receive different weights of presumption based on the extent to which they were relied upon in resolving the motion." 435 F.3d at 123. Thus, even though the Court does not base its decision to deny Ciccotelli's motion to amend on the information presented in the settlement agreement, the presumption of access remains strong because the agreement was submitted to the Court for the purpose adjudicating several of Ciccotelli's claims. *See id.*

Nonetheless, upon consideration of the countervailing factors favoring nondisclosure, the Court ultimately finds that Chase's privacy interest is sufficient to overcome the presumption of access in this case. Chase is not a party to the present suit. *Roberts v. Lederman*, 2004 WL 2238564, at *7 (E.D.N.Y. Oct. 4, 2004) ("[T]he presence of innocent third parties who would suffer serious harm by disclosure of information contained in the motions militates in favor of keeping them under seal."). In agreeing to settle the 2008 case, Chase sought to limit the publicity of the settlement agreement through the use of an explicit confidentiality clause. Chase has a plain privacy interest in maintaining the confidentiality of its settlement terms, and disclosure of the agreement at this juncture would be highly detrimental to that interest. Accordingly, if Ciccotelli would like to challenge

26

the settlement agreement's confidentiality provision, he should do so in the 2008 case so as to afford Chase an adequate opportunity to represent its interests.  The Court therefore **grants** DBNTC's motion to seal and **denies** Ciccotelli's motion to dismiss the same.[2]

### CONCLUSION

As explained above, the Court **grants** DBNTC's motion to dismiss (ECF No. 18) and **denies** Ciccotelli's motion to amend the Complaint (ECF No. 26).  The Court also **denies** Ciccotelli's motion for a default judgment (ECF No. 30) and **grants** Defendants' motion to vacate the entry of default (ECF No. 37). Finally, the Court **grants** DBNTC's motion to seal (ECF No. 32) and **denies** Ciccotelli's motion to dismiss DBNTC's motion to seal (ECF No. 34).  Because the defaulted Defendants joined in DBNTC's motion to dismiss, the present suit is now **dismissed** in its entirety.

Dated at Burlington, in the District of Vermont, this 4th day of May, 2016.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

---

[2] Ciccotelli's argument that DBNTC lacks standing to request that the settlement agreement be sealed is misguided.  As explained above, in ruling on the motion to seal, the Court is not enforcing the terms of the settlement agreement, but rather making a determination regarding the public right of access.